**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DAMIONNE ANTHONY DAVIS,**

       **Plaintiff,**

v.                                                                          Case No: 6:23-cv-1506-RBD-EJK

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

### REPORT AND RECOMMENDATION

This cause comes before the Court on Plaintiff's appeal of an administrative decision denying his application for Supplemental Security Income ("SSI"), alleging January 5, 2010, as the disability onset date. (Doc. 18 at 1 & n.1.) In a decision dated November 18, 2022, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. (Tr. 16–47.) Plaintiff has exhausted his available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the parties' memoranda (Docs. 18, 20), and the applicable law. For the reasons stated herein, the undersigned respectfully recommends that the Commissioner's decision be affirmed.

**I.     BACKGROUND**

The ALJ found that Plaintiff suffers from the severe impairments of unspecified seizure disorder, ventricular shunt, major depressive disorder, attention deficit hyperactivity disorder, learning disability, intellectual disorder, and substance

addiction disorder. (Tr. 24.) Aided by the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff, despite these impairments, retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> The claimant can never climb ladders, ropes, or scaffolds. The claimant can frequently perform tasks requiring near acuity and far acuity. He must avoid all exposure to work place hazards such as moving machinery, moving mechanical parts, and unprotected heights. The claimant can understand and remember simple instructions. The claimant can maintain concentration, persistence, and pace over the course of a normal 8-hour workday to perform no more than simple tasks. Additionally, the claimant can frequently interact with the general public, co-workers and supervisors.

(Tr. 27). The ALJ found that, with this RFC, Plaintiff could work as a hand packager, laundry worker, or street cleaner, for example. (Tr. 39.)

## II.   ISSUES ON APPEAL

The sole issue on appeal is whether the ALJ failed to apply the correct legal standards to the opinion of Robert E. Cohen, Psy.D. (Doc. 18.)

## III.   STANDARD

The Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## IV.    ANALYSIS

Plaintiff argues that the ALJ failed to properly evaluate the supportability and consistency factors of Dr. Cohen's medical opinion. (Doc. 18 at 5.) Specifically, Plaintiff asserts that the ALJ cherry picked findings from Dr. Cohen's evaluation and overlooked other medical evidence in the record to ultimately find Dr. Cohen's opinion unpersuasive. (*Id.* at 10–12.) The Commissioner responds that the ALJ properly evaluated Dr. Cohen's medical opinion, and it was therefore appropriate to find his opinion unpersuasive. (Doc. 20 at 5–7.)

Under the revised regulations, which apply here,[1] the Commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the Commissioner must "consider" the "persuasiveness" of all medical opinions and prior administrative medical findings. *Id.* To that end, the Commissioner considers five factors: 1) supportability; 2) consistency; 3) relationship with the claimant;[2] 4)

---

[1] Plaintiff filed his application for SSI payments on November 26, 2017. (Doc. 18 at 5.) The revised regulations apply to any claim filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c.

[2] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§

specialization; and 5) other factors "that tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* §§ 404.1520c(c), 416.920c(c).

The most important of these factors are supportability and consistency, and the ALJ *must* explain the consideration of those two factors. *Id.* §§ 404.1520c(a), (b)(2); 416.920c(a), (b)(2). The ALJ may, but is not required to, explain how he or she considered the other factors (i.e., relationship with claimant, specialization, and "other factors"). *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis—the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source. *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1). The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

*Id*. In sum, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record.

---

404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)– (v).

Under the new regulations, "supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Plaintiff concedes that the ALJ examined the supportability and consistency factors related to Dr. Cohen's opinion. (Doc. 18 at 10–11.) Nevertheless, Plaintiff asserts that the ALJ's conclusion is not supported by substantial evidence. (*Id.*) Specifically, as to supportability, Plaintiff argues that the ALJ overlooked important findings in Dr. Cohen's own medical examination of Plaintiff. (*Id.* at 10.) As to consistency, Plaintiff argues that the three medical opinions the ALJ identified in finding Dr. Cohen's opinion inconsistent were either inapposite or did not stand for the proposition the ALJ articulated. (*Id.* at 10–11.)

Dr. Cohen examined and tested Plaintiff on June 13, 2019, and authored a report on July 27, 2019. (Tr. 1029–40.) Dr. Cohen reviewed Plaintiff's history of mental and other relevant impairments, including his intellectual disability, impaired memory, impaired gross and fine motor function, ADHD, and emotional

dysregulation. (Tr. 1038.) Dr. Cohen noted that Plaintiff had no history of meaningful relationships outside of his family and has been unable to keep a job for more than a few weeks given his cognitive and executive deficiencies. (*Id.*) Dr. Cohen emphasized that his psychosocial examination of Plaintiff continued to demonstrate Plaintiff's lifelong neurocognitive and neuropsychological deficits. (*Id.*) Plaintiff showed questionable hygiene, poor motor control, abulia, poor insight, evidence of intellectual disability, executive dysfunction, profound memory loss, extremely poor adaptive functioning skills strongly supportive of the need for guardianship, and the inability to live independently. (*Id.*) Dr. Cohen also explained that, given Plaintiff's medical history, he was at a higher likelihood to develop a neurodegenerative disease such as dementia, and that Plaintiff's mother had also noticed Plaintiff's memory worsening. (*Id.*)

Dr. Cohen administered a battery of tests to Plaintiff. For example, he administered the Montreal Cognitive Assessment, which is a "composite cognitive screening measure assessing orientation, language, delayed recall, attention, naming, and visual-spatial/executive function." (Tr. 1032.) Dr. Cohen noted:

> performance was very poor and the test was discontinued. He was unable to complete a visuospatial/executive functioning task of connecting circles with numbers and letters in order "number, letter, number, letter, etc." He was also unable to draw a copy of a cube or correctly draw a clock with hands at a stated time. He was able to identify three animals correctly and was oriented to year and day, but not to date, month, place, or city.

(Tr. 1032–33.) Dr. Cohen also administered the Wide Range Assessment Test ("WRAT-5) Word Reading subtest to Plaintiff. (Tr. 1033.) Plaintiff "performed in the borderline impaired range (3rd percentile) and equivalent to a fourth-grade level. On a test of his Sentence Comprehension, he performed at the borderline impaired range (2nd percentile) and comparable to a 3rd-grade level." (*Id.*) As to Plaintiff's intellectual functioning, Dr. Cohen noted:

> Consistent with testing performed in 1999 (20 years ago), the current administration of an intellectual measure (WAIS-IV), Mr. Davis attained an overall Full-Scale Intellect of 62, 1st percentile. This score falls in the moderately impaired range compared to others his age and consistent with mild intellectual disability. His Perceptual Reasoning IQ was in the impaired range (PRI = 69), and his Verbal Comprehension IQ was in the impaired range (VCI = 68). Mr. Davis' Processing Speed IQ was in profoundly impaired range (PSI = 59), and his Working Memory IQ (WMI = 74) was in the borderline impaired range. There was not a significant amount of intra-subtest scatter. This means that within each measured index, the subtests scores revealed very similar performances . . . except for his mental arithmetic ability, which was in the below-average range.

(Tr. 1033.) Dr. Cohen ultimately opined that Plaintiff could not engage in gainful employment and was not a good candidate for vocational training. (Tr. 1038.)[3]

The ALJ reviewed Dr. Cohen's evaluation and testing results. (Tr. 32.) The ALJ then went on to find as follows:

---

[3] Dr. Cohen also opined that Plaintiff was disabled, but Plaintiff does not challenge the ALJ's finding on this point, recognizing that this is an issue reserved solely for the Commissioner. (Doc. 18 at 10 n.6.)

> Dr. Cohen's opinions appear disproportionate and extreme, which makes the conclusions offered unpersuasive (Exhibit 11F). Although the WRAT-5 showed borderline results for reading and the claimant needed instructions repeated, findings on the WAIS-IV noted consistency for mild intellectual disability. Furthermore, Dr. Cohen observed there was no evidence of delusional thinking and while orientation was not full, attention was adequate. Additionally, Dr. Cohen noted the claimant's effort was normal and when tasks were more difficult, the claimant persevered. It is unclear how Dr. Cohen arrived at such extreme limitations.
>
> Additionally, Dr. Cohen's opinions are inconsistent with the observations from other physicians. The psychiatric inspections at Florida Hospital were repeatedly normal (Exhibit 6F). Consultative psychologist Dr. Ruddock observed impulse control was normal and there was no overt psychosis observed. It was noted fund of knowledge suggested below average intelligence and recall was variable but improved when provided with cueing. It was also observed concentration was intact and the claimant was able to follow a one-step written command, and a three-stage verbal directive. The MMSE was 25/30 and he was able to answer change-making and calculation problems correctly (Exhibit 7F). Consultative examiner Dr. Perdomo observed a normal mental status examination (Exhibit 8F). It is unclear how Dr. Cohen's observations and opinions would skew so far from the common observations from other physicians.
>
> Lastly, Dr. Cohen opined the claimant is disabled. Lastly, an opinion as to the nature and severity of the claimant's impairment regarding the ability to work is an issue reserved to the Commissioner (20 CFR 404.1527(d)(e), 416.927(d)(e)). Pursuant to the evidentiary rules, although considered, I did not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c) and 416.920b(c). Based on these factors, I find Dr. Cohen's overall opinions to be unpersuasive.

(Tr. 37.)

Eleventh Circuit precedent requires the ALJ to examine the medical record as a whole. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence.")  It is important, however, for the reviewing Court to refrain from reweighing the evidence that was before the ALJ. *Winschel*, 631 F.3d at 1178 ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].") (citations and quotations omitted).

As to the supportability factor, Plaintiff argues that the ALJ cherrypicked findings from Dr. Cohen's evaluation to find his opinion unpersuasive. (Doc. 18 at 10.) Plaintiff argues that, while some of the ALJ's cited examples from Dr. Cohen's opinion were true, the ALJ also overlooked important parts of Dr. Cohen's examination. (*Id.*) The Commissioner responds that the record contains enough evidence to support the ALJ's conclusion. (Doc. 20 at 6–7.) While the ALJ did give credit to some of Dr. Cohen's findings, he ultimately found them "disproportionate and extreme." (Tr. 37.) For example, the ALJ acknowledged that the WRAT-5 showed borderline results for reading and that Plaintiff needed instructions repeated. (*Id.*) But what the ALJ found more convincing was that Plaintiff had only mild intellectual disability, did not have evidence of delusional thinking, had adequate attention, and persevered even when tasks were difficult. (*Id.*); (Tr. 1032.) This is enough evidence, given the standard of review, for the undersigned to conclude that the ALJ's decision on supportability was supported by substantial evidence.

Next, when addressing the consistency factor, the ALJ cited three pieces of evidence in finding Dr. Cohen's opinion unpersuasive, which Plaintiff contends does not actually support the ALJ's conclusion. First, the ALJ noted the psychiatric inspections at Florida Hospital were repeatedly normal, citing Exhibit 6F. (Doc. 18 at 10–11.) Plaintiff asserts that Exhibit 6F contains records from Plaintiff's emergency room visits to Florida Hospital for various physical injuries and that none of these visits were for psychiatric complaints. (*Id.*) Thus, Plaintiff takes issue with the ALJ's reliance on them to discount Dr. Cohen's opinions regarding Plaintiff's mental abilities.

However, the ALJ specifically noted he was relying on the "psychiatric inspections" done at Florida Hospital. (Tr. 37.) While Plaintiff presented to Florida Hospital for physical complaints, including seizures, on various occasions in January 2018, October 2016, and August 2016, at each visit, it appears a psychiatric impression of Plaintiff was documented, and each of those impressions were normal. (Tr. 34 ("The psychiatric inspections at Florida Hospital were repeatedly normal, the claimant was regularly alert and fully oriented, and had a normal mood and affect (Exhibit 6F).").); (Tr. 928–998.)

Second, the ALJ addressed consultative psychologist Dr. Ruddock's opinion dated April 3, 2018. (Tr. 1000.) Plaintiff asserts that the ALJ overlooked the parts of Dr. Ruddock's opinion that were consistent with Dr. Cohen's opinion. (Doc. 18 at 10.) Plaintiff sets forth that:

> Dr. Ruddock noted Mr. Davis's "[s]peech tone was low; content was incomprehensible at times. Hygiene and grooming was poor. He appeared to have poor posture and gait. His word choice and fund of knowledge appeared to be below average." (Tr. 1001). Dr. Ruddock opined Mr. Davis's "[i]nsight and judgment appeared to be poor" (Tr. 1002). These findings were consistent with Dr. Cohen's opinions.

(*Id.* at 11.) Plaintiff is certainly correct that many of Dr. Ruddock's observations of Plaintiff overlapped with Dr. Cohen's. However, what the ALJ found more persuasive was Dr. Ruddock's findings that Plaintiff had normal impulse control, no overt psychosis, improved recall with cueing, intact concentration, was able to follow a one-step written command and a three-stage verbal directive, was able to make change, and had a normal mental status examination. (Tr. 37); (Tr. 1000–02.)

Finally, the ALJ stated that "[c]onsultative examiner Dr. Perdomo observed a normal mental status examination" on April 11, 2018. (Tr. 37.) But, as Plaintiff points out, Dr. Perdomo saw Plaintiff for a consultative physical examination, not a mental status examination, and therefore, Plaintiff asserts, the ALJ's reliance on this is misplaced. (Tr. 1003–04.) A review of Dr. Perdomo's records reveals that he saw Plaintiff for a chief complaint of seizures. (Tr. 1003.) While it does appear that the exam was mainly physical, Dr. Perdomo did note that Plaintiff had a "[n]ormal mental status exam." (Tr. 1004.)

Taken together, the ALJ articulated enough evidence to sustain his credibility finding. Plaintiff must show the absence of substantial evidence to support the ALJ's finding, and he is unable to do so here. *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x

595, 604 (11th Cir. 2017) (unpublished) (noting claimant "must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). Plaintiff's argument is tantamount to a request for this Court to reweigh the evidence—which it cannot do. *Winschel*, 631 F.3d at 1178 ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].") (citations and quotations omitted). Accordingly, this argument fails.

## V. RECOMMENDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **AFFIRM** the Commissioner's final decision; and

2. **DIRECT** the Clerk of Court to enter judgment in favor of Defendant and **CLOSE** the file.

### NOTICE TO PARTIES

The party has **fourteen days** from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on June 25, 2024.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE